John Cooper, Jr.
Jonathan McLane
Veteran Rescue Mission
7670 N. Star Grass Drive
Tucson, Arizona 85741

FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

Katie Etcheverry

2020 JAN 4 59 Linan 13nit #3
Denver, CO 80204

JEFFREY P. COLWELL
CLERK

BY_____DEP. CLK

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLORADO

Jonathan McLane;

John Thomas Cooper, Jr.;

Katie Etcheverry,

       Plaintiffs,

    vs.

City and County of Denver; Michael

B. Hancock; Amanda P. Sandoval;

Kevin Flynn; Jamie Torres; Kendra

Black; Amanda Sawyer; Paul

Kashmann; Jolon Clark; Christopher

Herndon; Candi CdeBaca; Chris

Hinds; Stacie Gilmore; Robin Kniech;

Deborah Ortega; Kristin M. Bronson;

Michael J. Hyman; Paul Pazen; Barb

Archer; Ron Thomas; JOHN and

JANE DOEs 1-10.

       Defendants.

Case No.

**CIVIL RIGHTS COMPLAINT**

**Jury Trial Demanded**

## VERIFIED COMPLAINT

    Plaintiffs—*in propria persona*—state for their Verified Complaint the

following under penalty of perjury:

## **INTRODUCTION**

1). This is an action pursuant to 42 U.S.C. § 1983 for declaratory and injunctive relief and monetary damages to redress the unconstitutional denial of Plaintiffs' rights to free speech, expression, and assembly guaranteed by the First and Fourteenth Amendments to the United States Constitution; and Plaintiffs' rights under the Fourth and Fourteenth Amendments to the United States Constitution to due process, equal protection, the right to travel and to be free of unreasonable searches and seizures.

2). The City of Denver engages in a pattern or practice of taking action against homeless citizens and those that advocate for them for First Amendment activity in violation of the First, Fourth and Fourteenth Amendments. This pattern is manifest in a range of ways, including:

• The unnecessary and excessive application of statutes or ordinances to prevent or obstruct activity that is protected by the First and Fourteenth Amendments;

• The unnecessary, excessive or retaliatory use of police powers, such as detention, "running" an individual's name through CCIC/FCIC, handcuffing, or otherwise interfering with an individual's right to travel after that individual exercised First and Fourteenth Amendment rights in the presence of City officials;

• Excessive force or threats of the use of such force against persons who are exercising First and Fourteenth Amendment rights;

• The employment of poor tactics and policies that place officials in situations where constitutional violations become inevitable and place officials and civilians at unnecessary risk.

3). In continuing these actions, Defendants are violating Plaintiffs' First, Fourth, and Fourteenth Amendment rights and chilling their present and future exercise of these rights. Judicial intervention is required to end Defendants' ongoing interference with Plaintiffs' freedom of speech, right to travel, and retaliation against Plaintiffs for exercising their First Amendment rights; and to prevent the ongoing irreparable harms to Plaintiffs resulting from these Constitutional violations.

## JURISDICTION

4). This Court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331 (in that they arise under the Constitution of the United States), § 1343(a)(3) (in that they are brought to redress deprivations, under color of state authority, of rights, privileges, and immunities secured by the United States Constitution), § 1343 (in that they seek to secure equitable relief under 42 U.S.C. § 1983), and the Declaratory Judgment Act, 28 U.S.C. §§ 2201(a) and 2202.

5). Venue is proper under 28 U.S.C. § 1391 (b) because a substantial part of the events or omissions giving rise to the claims herein occurred in the City and County of Denver, in the State and District of Colorado.

6). This Court has the authority to grant damages, declaratory and injunctive relief, and any other appropriate relief pursuant to 28 U.S.C. § 1331; 28 U.S.C. § 1343; and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

## **PARTIES**

7). Plaintiff John Thomas Cooper, Jr., is a natural citizen of the United States and of the State of Arizona, currently residing in the City of Tucson, in the County of Pima. Plaintiff Cooper is currently homeless, with a mailing address of 7670 N. Star Grass Drive Tucson, Arizona 85741. Plaintiff was a resident of Arizona during all relevant times to this action.

8). Plaintiff Jon McLane, is a natural citizen of the United States and of the State of Arizona, currently residing in the City of Tucson, in the County of Pima. Plaintiff's mailing address is 7670 N. Star Grass Drive Tucson, Arizona 85741. Plaintiff was a resident of Arizona during all relevant times to this action.

9). Plaintiff Katie Etcheverry is a natural citizen of the United States and of the State of Colorado, currently residing in the City and County of Denver. Plaintiff's mailing address is 1419 Lipan Unit #3 Denver, CO 80204. Plaintiff was a resident of Colorado during all relevant times to this action.

10). Defendant Michael B. Hancock, who is a natural person was a resident of the City and County of Denver, Colorado, United States of America; and the Mayor of the City of Denver, at all times relevant to this Complaint. He is responsible for the overall management of the Denver City Government. He is also responsible for the oversight and policy management of the Denver City Attorney's Office and the Denver Police Department.

11). Defendant Amanda P. Sandoval, who is a natural person was a resident of the City and County of Denver, Colorado, United States of America; and the Council Member for District 1 of the City of Denver, at all times relevant to this

Complaint. She is responsible for the overall management of the Denver City Government.

12). Defendant Kevin Flynn, who is a natural person was a resident of the City and County of Denver, Colorado, United States of America; and the Council Member for District 2 of the City of Denver, at all times relevant to this Complaint. He is responsible for the overall management of the Denver City Government.

13). Defendant Jamie Torres, who is a natural person was a resident of the City and County of Denver, Colorado, United States of America; and the Council Member for District 3 of the City of Denver, at all times relevant to this Complaint. She is responsible for the overall management of the Denver City Government.

14). Defendant Kendra Black, who is a natural person was a resident of the City and County of Denver, Colorado, United States of America; and the Council Member for District 4 of the City of Denver, at all times relevant to this Complaint. She is responsible for the overall management of the Denver City Government.

15). Defendant Amanda Sawyer, who is a natural person was a resident of the City and County of Denver, Colorado, United States of America; and the Council Member for District 5 of the City of Denver, at all times relevant to this Complaint. She is responsible for the overall management of the Denver City Government.

16). Defendant Paul Kashmann, who is a natural person was a resident of the City and County of Denver, Colorado, United States of America; and the Council Member for District 6 of the City of Denver, at all times relevant to this Complaint. He is responsible for the overall management of the Denver City Government.

17). Defendant Jolon Clark, who is a natural person was a resident of the City and County of Denver, Colorado, United States of America; and the Council Member for District 7 of the City of Denver, at all times relevant to this Complaint. He is responsible for the overall management of the Denver City Government.

18). Defendant Christopher Herndon, who is a natural person was a resident of the City and County of Denver, Colorado, United States of America; and the Council Member for District 8 of the City of Denver, at all times relevant to this Complaint. He is responsible for the overall management of the Denver City Government.

19). Defendant Candi CdeBaca, who is a natural person was a resident of the City and County of Denver, Colorado, United States of America; and the Council Member for District 9 of the City of Denver, at all times relevant to this Complaint. She is responsible for the overall management of the Denver City Government.

20). Defendant Chris Hinds, who is a natural person was a resident of the City and County of Denver, Colorado, United States of America; and the Council Member for District 10 of the City of Denver, at all times relevant to this

Complaint. He is responsible for the overall management of the Denver City Government.

21). Defendant Stacie Gilmore, who is a natural person was a resident of the City and County of Denver, Colorado, United States of America; and the Council Member for District 11 of the City of Denver, at all times relevant to this Complaint. She is responsible for the overall management of the Denver City Government.

22). Defendant Robin Kniech, who is a natural person was a resident of the City and County of Denver, Colorado, United States of America; and is one of the Council At-Large for the City of Denver, at all times relevant to this Complaint. She is responsible for the overall management of the Denver City Government.

23). Defendant Deborah Ortega, who is a natural person was a resident of the City and County of Denver, Colorado, United States of America; and is one of the Council At-Large for the City of Denver, at all times relevant to this Complaint. She is responsible for the overall management of the Denver City Government.

24). Defendant Kristin M. Bronson, who is a natural person was a resident of the City and County of Denver, Colorado, United States of America; and was the City Attorney for the City of Denver, at all times relevant to this Complaint. She is responsible for the overall management of the City Attorney's Office, providing policy and legal advice to the Mayor, City Council, City agencies and departments, all city boards and commissions, the City Auditor and the Clerk and Recorder. She is the final decision maker on critical legal decisions facing the city

and manages the City law firm of over 220 attorneys, paralegals, victim advocates and staff.

25). Defendant Michael J. Hyman, who is a natural person was a resident of the City and County of Denver, Colorado, United States of America; and is the Deputy City Attorney for the City of Denver, at all times relevant to this Complaint. He is responsible for managing the day-to-day operations of more than 200 attorneys and staff and working closely with the City Attorney in providing legal and policy advice to the Mayor and the City on a wide range of projects, initiatives, and issues.

26). Defendant Paul Pazen who is a natural person, was a resident of the City and County of Denver, Colorado, United States of America; and was the Chief of the Denver Police Department at all times relevant to this Complaint. He is and has been responsible for the promulgation and implementation of legal enforcement policies, procedures, and practices in the City and County of Denver. He is also responsible for the oversight and policy management of the Denver Police Department.

27). Defendant Barb Archer, who is a natural person, was a resident of the City and County of Denver, Colorado, United States of America; and was the Deputy Chief of the Denver Police Department at all times relevant to this Complaint. She is and has been responsible for the promulgation and implementation of legal enforcement policies, procedures, and practices in the City of Denver. She is commander of Administrative Services, responsible for the administrative decisions concerning application of City Code by all Field Officers. She is also responsible for the development and implementation of training

procedures and police policies to give guidance to field officers concerning the applicability of the Constitution of the United States to field operations.

28). Defendant Ron Thomas, who is a natural person, was a resident of the City and County of Denver, Colorado, United States of America; and was the Chief of the Patrol Division of the Denver Police Department at all times relevant to this Complaint. He is and has been responsible for the promulgation and implementation of legal enforcement policies, procedures, and practices for the Patrol Division of the Denver Police Department. As the Commander of the Denver Police Patrol Division, he is also responsible for the oversight and policy management of all patrol action of the Denver Police Department.

29). Defendants DOE 1-10 are Denver Police Field Officers who responded and arrested Plaintiff McLane. Plaintiffs do not at the current time possess the proper names of these Defendants and therefore must sue these individuals under such fictitious names. Plaintiffs will amend this document with these Defendants proper names when the names have been ascertained.

30). Defendant City and County of Denver is a Municipal Corporation, organized under the laws of the State of Colorado. It is responsible for the policies, procedures, and practices implemented through its various agencies, agents, departments, and employees; and for any injury occasioned thereby.

31). Plaintiffs sue all Defendants in their official and individual capacities.

32). At all times material to this Complaint, Defendants acted toward Plaintiffs under color of the statutes, ordinances, customs, and usage of the State

of Colorado; the Denver Police Department; the Denver Parks and Recreation Department; and the City and County of Denver.

## FACTUAL ALLEGATIONS

### Lack of Policy, Training, and Procedures
### Designed to Prevent Constitutional Violations

33). On information and belief, Defendant City of Denver has no policy or procedure in place to discipline City officials for violations of constitutional rights, and routinely ignores citizen complaints if those complaints are based on constitutional violations.

34). On information and belief, Defendant City of Denver has no policy of providing training or policy guidance to City officials concerning First Amendment freedoms, and has a pervasive custom of officials maintaining the official stance of "sue us if you think the constitution is an issue."

35). On information and belief, Defendants City of Denver, Pazen, Archer, Bronson, Hyman, Thomas, Hancock, and JOHN/JANE DOEs 1-10 have a policy and practice of training police and other City officials that the First Amendment does not protect citizens engaged in lawful demonstration, assembly, association or protest if those actions are taken to protect the rights or to assist the plight of homeless people. These Defendants' vague unwritten policy does not include specific criteria or conditions for persons seeking to engage in First Amendment activities, nor instructions concerning the applicability of the First Amendment to the actions of law enforcement or City personnel.

36). On information and belief, all Defendants are aware of and condone the actions taken to restrict First Amendment activities, including the harassment,

intimidation, and retaliatory acts City officials have directed at Plaintiffs, and have taken no action to lift those restrictions or to prevent future harassment, intimidation, and retaliatory acts from being directed at Plaintiffs.

37). By failing to provide proper training and policy guidance concerning the applicability of the First Amendment to governmental action against citizens, and by maintaining a policy that the First Amendment does not protect citizens engaged in lawful demonstration, assembly, association or protest if those actions are taken to protect the rights or to assist the plight of homeless people, Defendants' actions have chilled, deterred, and infringed upon Plaintiffs' right to engage in protected speech, assembly and association resulting in harm to Plaintiffs.

38). The acts, omissions, policies, customs, and/or practices of all Defendants are causing irreparable harm to Plaintiffs due to interference with and chilling of their First Amendment rights to protest and/or their group effort to provide charitable relief to homeless citizens, for which they have no adequate remedy at law.

39). An actual and immediate controversy has arisen and now exists between Plaintiffs and Defendants regarding Plaintiffs' ability to exercise First Amendment rights to protest governmental action and provide charitable relief to homeless citizens from public right-of-ways. Plaintiffs are entitled to a declaration of rights with respect to this controversy. Without such a declaration, Plaintiffs will be uncertain of their rights and responsibilities under the law, and Defendants will be free to continue their application of a custom which bars individuals from engaging in protected activity.

**Unnecessary, Excessive or Retaliatory Actions Against Plaintiffs**

40). Veteran Rescue Mission (VRM) and its ministry is a 26 U.S.C. § 501(c)(3) non-profit religious organization continuously registered with the IRS since 2017. The Church is a religious organization that conducts religious services, Bible readings, evangelism, and has a pastoral ministry that help the disenfranchised population with access to food, social benefits navigation, case management, administrative agency representation and document filing, reemployment services, and job creation. Plaintiff McLane is the Pastor at the VRM Church, is the founder of the Church, and has been licensed as an ordained minister of God since 2017. Plaintiff Cooper is the Executive Assistant to Plaintiff McLane at the VRM Church.

41). Pastor Jon McLane is a real Pastor of Christ committed to the achievement of financial justice and social integration in Arizona and across the United States. This mandate comes directly from the Scriptures:

> Speak up for those who cannot speak for themselves, for the rights of all who are destitute. Speak up and judge fairly; defend the rights of the poor and needy.

Proverbs 31:9. See also Deuteronomy 15:11; Ephesians 4:28; Exodus 17:12; Galatians 6:2; Hebrews 6:10; Hebrews 13:16; James 1:17; John 15:12; John 15:13; Luke 6:38; Matthew 5:16: Matthew 5:42; Matthew 10:8; Philippians 2:4; Proverbs 3:27; Proverbs 19:17; Proverbs 22:9; Romans 12:13;Romans 15:1; Luke 12:33-34; Matthew 25:44-45; Luke 3:10-11; James 2:14-17; Matthew 25:35-40; Luke 10:25-37; compare 1 John 4:19-20 ("We love because he first loved us. Whoever claims to love God yet hates a brother or sister is a liar. For whoever

does not love their brother and sister, whom they have seen, cannot love God, whom they have not seen.").

42). In accordance with this Scriptural mandate, Plaintiffs Cooper, McLane and Etcheverry decided to take action in the City of Denver to assist the thousands of homeless people in the Denver area suffering under the City's urban camping ban. Plaintiffs founded the Denver Downtown Streets Alliance, which is a program of VRM designed to address the gate, space, place, and waste for the local housed and unhoused population, through collective community management to establish service connection and effective policy.

43). On May 23, 2019, Plaintiffs staged a protest and outreach event in Denver to bring light to the plight of the homeless and to provide temporary shelter, information, religious services, and moral support to Denver's homeless population. Plaintiffs set up a tent, tables, chairs and signs on a 10 foot public easement adjacent to a Denver City Park, roughly 50 feet from the start of the park boundary line.

44). During the protest, and pursuant to their unwritten policy that the First Amendment does not protect citizens engaged in lawful demonstration, assembly, association or protest if those actions are taken to protect the rights or to assist the plight of homeless people, Defendants DOEs 1-10—officers of the Denver Police Department—reported to the site of the protest, arrested Plaintiff McLane, and ordered Plaintiffs to cease all protest activity under threat of arrest.

45). Defendants DOEs 1-10 and several employees of the City Attorney's Office informed Plaintiffs that the First Amendment does not protect citizens engaged in lawful demonstration, assembly, association or protest if those actions

are taken to protect the rights or to assist the plight of homeless people, and that as Plaintiff McLane's "behavior was not part of any lawful demonstration, assembly, or protest" (this term was never defined), the City could bar Plaintiffs from exercising their First Amendment rights.

46). Defendants DOEs 1-10 justified the arrest and harassment of Plaintiffs by citation of the following laws:

**Sec. 38-86. - Obstruction of streets or other public passageways.**

(1) It shall be unlawful for any person to knowingly:

(a) Obstruct a highway, street, sidewalk, railway, waterway, building entrance, elevator, aisle, stairway, or hallway to which the public or a substantial group of the public has access or any other place used for the passage of persons, vehicles, or conveyances, whether the obstruction arises from the person's acts alone or from the person's acts and the acts of others; or

(b) Disobey a reasonable request or order to move issued by an individual the person knows, or reasonably should know, to be a peace officer, a firefighter, or a person with authority to control the use of the premises, to prevent obstruction of a highway or passageway or to maintain public safety by dispersing those gathered in dangerous proximity to a fire, riot, or other hazard.(2)For purposes of this section, "obstruct" means to render impassable or to render passage unreasonably inconvenient or hazardous.(3)It is an affirmative defense to charges brought under this section that the obstruction was authorized by a permit issued pursuant to this Code, or the Denver Building Code.

(Code 1950, §§ 802.17, 841.1-2(6); Ord. No. 434-05, § 1, 6-20-05)

**Sec. 38-86.1. - Sitting or lying down in the public right-of-way.**

(a) It shall be unlawful for any person to knowingly sit or lie down in the Downtown Denver Business Improvement District upon the surface of any public right-of-way or upon any bedding, chair, stool, or any other object placed upon the surface of the public right-of-way between the hours of 7:00 a.m. and 9:00 p.m.

(b) For purposes of this section:

(1) "Downtown Denver Business Improvement District" shall mean that area of the city bounded by and including the following streets: starting at a point at the intersection of Grant Street and 20th Avenue, extending west along 20th Avenue to its intersection with 20th Street extending northwest along 20th Street to its intersection with Wewatta Street (or Wewatta Street extended), extending southwest along Wewatta Street (or Wewatta Street extended) to its intersection with Speer Boulevard, extending generally southeast along Speer Boulevard to its intersection with 12th Street, extending southeast along 12th street to its intersection with Colfax Avenue, extending generally east along Colfax Avenue to its intersection with the alley between Sherman and Grant streets, extending north along the alley between Sherman and Grant Streets to its intersection with 16th Avenue, extending east along 16h Avenue to its intersection with Grant Street, and extending north along Grant Street to the point of beginning.

(2) "Designated human service outreach worker" shall mean any person designated in writing by the manager of the Denver Department of Human Services to assist law enforcement officers as provided in subsection (4), regardless of whether the person is an employee of the department of human services.

(3) "Public right-of-way" shall mean any street, sidewalk, alley, parkway, curb, median, traffic island, the public transit way of the 16th Street Mall, or any other publicly owned property used for pedestrian and vehicular travel.

(d) It is an affirmative defense to charges brought under this section that a person:

(1) Sits or lies down upon the public right-of-way due to a medical emergency.

(2) As a result of a disability, utilizes a wheel chair, walker or other similar device to move about the public right-of-way.

(3) Is operating or patronizing a commercial establishment located in the public right-of-way pursuant to any permit or license issued by the city.

(4) Is attending a parade, festival, performance, rally, demonstration, meeting, or similar event conducted in the public right-of-way pursuant to any permit or license issued by the city.

(5) Sits upon a chair or bench furnished by the city, the Downtown Denver Business Improvement District, or any other public agency in the public right-of-way.

(6) Sits upon a public sidewalk at a transit stop while waiting for public transportation; provided, however, that this exception shall not apply to any transit stop on the 16th Street Mall.

(e) No law enforcement officer shall issue a citation, make an arrest or otherwise enforce this section against any person unless:

(1) The officer orally requests or orders the person to refrain from the alleged violation of this section and, if the person fails to comply after receiving the oral request or order, the officer tenders a written request or order to the person warning that if the person fails to comply the person may be cited or arrested for a violation of this section; and

(2) The officer attempts to ascertain whether the person is in need of medical or human services assistance, including but not limited to mental health treatment, drug or alcohol rehabilitation, or homeless services assistance. If the officer determines that the person may be in need of medical or human services assistance, the officer shall make reasonable efforts to contact and obtain the assistance of a designated human service outreach worker, who in turn shall assess the needs of the person and, if warranted, direct the person to an

appropriate provider of medical or human services assistance in lieu of the person being cited or arrested for a violation of this section. If the officer is unable to obtain the assistance of a human services outreach worker, if the human services outreach worker determines that the person is not in need of medical or human services assistance, or if the person refuses to cooperate with the direction of the human services outreach worker, the officer may proceed to cite or arrest the person for a violation of this section so long as the warnings required by paragraph (a) have been previously given.

(Ord. No. 902-05, § 1, 12-5-05)

### Sec. 38-86.2. - Unauthorized camping on public or private property prohibited.

(a) It shall be unlawful for any person to camp upon any private property without the express written consent of the property owner or the owner's agent, and only in such locations where camping may be conducted in accordance with any other applicable city law.

(b) It shall be unlawful for any person to camp upon any public property except in any location where camping has been expressly allowed by the officer or agency having the control, management and supervision of the public property in question.

(c) No law enforcement officer shall issue a citation, make an arrest or otherwise enforce this section against any person unless:

(1) The officer orally requests or orders the person to refrain from the alleged violation of this section and, if the person fails to comply after receiving the oral request or order, the officer tenders a written request or order to the person warning that if the person fails to comply the person may be cited or arrested for a violation of this section; and

(2) The officer attempts to ascertain whether the person is in need of medical or human services assistance, including, but not limited to, mental health treatment, drug or alcohol rehabilitation, or homeless services assistance. If the officer determines that the person may be in need of medical or human services assistance, the officer

shall make reasonable efforts to contact and obtain the assistance of a designated human service outreach worker, who in turn shall assess the needs of the person and, if warranted, direct the person to an appropriate provider of medical or human services assistance in lieu of the person being cited or arrested for a violation of this section. If the officer is unable to obtain the assistance of a human services outreach worker, if the human services outreach worker determines that the person is not in need of medical or human services assistance, or if the person refuses to cooperate with the direction of the human services outreach worker, the officer may proceed to cite or arrest the person for a violation of this section so long as the warnings required by paragraph (1) of this subsection have been previously given.

(d) For purposes of this section:

(1) "Camp" means to reside or dwell temporarily in a place, with shelter. The term "shelter" includes, without limitation, any tent, tarpaulin, lean-to, sleeping bag, bedroll, blankets, or any form of cover or protection from the elements other than clothing. The term "reside or dwell" includes, without limitation, conducting such activities as eating, sleeping, or the storage of personal possessions.

(2) "Designated human service outreach worker" shall mean any person designated in writing by the manager of the Denver Department of Human Services to assist law enforcement officers as provided in subsection (c), regardless of whether the person is an employee of the department of human services.

(3) "Public property" means, by way of illustration, any street, alley, sidewalk, pedestrian or transit mall, bike path, greenway, or any other structure or area encompassed within the public right-of-way; any park, parkway, mountain park, or other recreation facility; or any other grounds, buildings, or other facilities owned or leased by the city or by any other public owner, regardless of whether such public property is vacant or occupied and actively used for any public purpose.

(Ord. No. 255-12, § 1, 5-14-12)

47). Plaintiffs were initially informed that they were violating §38-86.2, the Urban Camping Ban, however Plaintiff McLane was arrested for Park curfew violation despite the fact that Plaintiffs never entered the park at any time and the protest was not set up on park grounds. At the date set for trial on the merits in the Denver City Court, the Government dismissed Plaintiff McLane's case.

### Laws and Ordinances Enacted Specifically
### to Discriminate Against the Homeless

48). Since 2015, Defendant City and County of Denver has embarked upon an all-out assault on the homeless individual. Defendant City has enacted a laundry list of anti-homeless laws and customs barring behavior such as: Closure of public places the homeless frequently visit; construction of statutes prohibiting obstruction of sidewalks/public places to bar the carry or temporary storage of personal property, or the laying of one's body in a public place; strict enforcement of loitering/loafing in public places; denying individuals the right to sit or lay down on sidewalks or in other public places; denying individuals the right to sleep in public places; strict enforcement of City park curfews against individuals who patently appear homeless; prohibiting panhandling or begging in public areas where such activity is most lucrative; and making basic human functions such as bathing, urinating and defecating in public a criminal offense while utterly failing to provide a public means for individuals without homes to comply with the law.

49). On information and belief, all Defendants are aware of and condone the imposition of anti-homeless laws and customs to restrict the homeless' right to travel into the jurisdiction, and have taken no action to prevent the violation of Plaintiffs right to travel.

50). On information and belief, all Defendants condone and support these ordinances to erect direct barriers to travel, to impede travel, and to penalize migration of indigent individuals into the jurisdiction.

51). On information and belief, all Defendants condone and support ordinances that proscribe public sleeping and are aimed solely at homeless "transients", and not at the act of public sleeping.

52). On information and belief, all Defendants maintain this custom of prohibiting sleeping not because of any evil associated with the conduct itself, but rather to elevate concerns regarding the homeless by business owners and wealthy citizens—called "stake holders" by Defendants.

53). On information and belief, all Defendants are aware of the overwhelmingly disproportionate effect such laws have on Plaintiffs and others similarly situated. Because few people who have access to safe, sanitary shelter regularly sleep in outdoor public areas, the vast majority of those arrested are homeless. These Defendants know this, and have failed to take action to mitigate the disproportionate effect of these laws on Plaintiffs.

54). On information and belief, all Defendants are aware of and condone the application of laws making basic human functions such as bathing, urinating and defecating in public a criminal offense, and utterly fail to provide a public means for individuals without homes to comply with the law; for the sole purpose of encouraging indigent individuals currently living in the jurisdiction to leave the City of Denver, and to discourage indigent individuals like Plaintiff Cooper from migrating to the jurisdiction.

55). As a result of Defendants' custom, Plaintiffs' and the other 8,000 homeless who live in the City of Denver face a daily "Hobson's choice": they must exclude themselves from the jurisdiction or face arrest and prosecution for violating its antihomeless ordinance. Plaintiffs' are forced to live as criminals, violating Defendant's antihomeless ordinance whenever they succumb to the need to sleep, bath, urinate or defecate. This barrier effectively prevents Plaintiffs' from entering or remaining in the jurisdiction for longer than they can remain awake, clean, and without need of restroom services.

56). The acts, omissions, policies, customs, and/or practices of all Defendants are causing irreparable harm to Plaintiffs due to interference with and chilling of their Fourteenth Amendment fundamental right to travel and their First Amendment right to demonstration, assembly, association or protest on the streets of the City of Denver, for which they have no adequate remedy at law.

57). An actual and immediate controversy has arisen and now exists between Plaintiffs and Defendants regarding Plaintiffs' ability to exercise their Fourteenth Amendment fundamental right to travel and their First Amendment right to demonstration, assembly, association or protest on the public right-of-ways. Plaintiffs are entitled to a declaration of rights with respect to this controversy. Without such a declaration, Plaintiffs will be uncertain of their rights and responsibilities under the law, and Defendants will be free to continue their application of a custom which bars individuals who patently appear homeless from performing any of the following acts on the sidewalks of the City of Denver: carrying or temporarily storing personal property; sit or lay down on sidewalks even when giving space for passersby; sleep on sidewalks even when giving space for passersby; prohibiting demonstration, assembly, association, protest,

panhandling or begging on the sidewalks of the City of Denver if one appears homeless or does so for the rights of the homeless.

## FIRST CAUSE OF ACTION
### Violation of the Fourteenth Amendment
### Equal Protection Clause
### 42 U.S.C. §1983

80). Plaintiffs reallege and incorporate the foregoing paragraphs as if set forth herein.

81). Defendants' actions described above violated Plaintiffs' rights under the Fourteenth Amendment to the United States Constitution by denying Plaintiffs the equal protection of the laws in violating the fundamental right to travel. Moreover, this discrimination clearly violates equal protection as Plaintiffs have been arbitrarily and irrationally treated differently from others similarly situated solely on the basis of their indigency, and no rational basis for the different treatment exists.

82). Defendants' conduct violated clearly established constitutional or other rights, of which Defendants knew, or of which reasonable public officials should have known, rendering Defendants liable to Plaintiffs under 42 U.S.C. § 1983.

83). As a direct and proximate result of the unlawful actions of these Defendants, Plaintiffs have suffered emotional and economic harm.

## SECOND CAUSE OF ACTION

### Violation of the Fourth Amendment

### 42 U.S.C. §1983

84). Plaintiffs reallege and incorporate the foregoing paragraphs as if set forth herein.

85). Defendants' actions described above violated Plaintiffs' rights under the Fourth Amendment to the United States Constitution by detaining Plaintiffs and arresting Plaintiff McLane without probable cause, and failing to take action to protect Plaintiffs' constitutional rights when advised of serious risk of violation.

86). Defendants' conduct violated clearly established constitutional or other rights, of which Defendants knew, or of which reasonable public officials should have known, rendering Defendants liable to Plaintiffs under 42 U.S.C. § 1983.

87). The violation of Plaintiffs' Fourth Amendment rights occurred pursuant to a policy, custom, or practice, maintained by Defendant City of Denver.

88). As a direct and proximate result of the unlawful actions of these Defendants, Plaintiffs have suffered emotional and economic harm.

## THIRD CAUSE OF ACTION

### Violation of the First Amendment

### 42 U.S.C. §§1983

89). Plaintiffs reallege and incorporate the foregoing paragraphs as if set forth herein.

90). Defendants' actions described above violated Plaintiffs' rights under the First Amendment to the United States Constitution by infringement on and chilling of protected First Amendment activity and failing to take action to protect Plaintiffs' constitutional rights when advised of serious risk of violation.

91). Defendants' conduct violated clearly established constitutional or other rights, of which Defendants knew, or of which reasonable public officials should have known, rendering Defendants liable to Plaintiffs under 42 U.S.C. § 1983.

93). The violation of Plaintiffs' First Amendment rights occurred pursuant to a policy, custom, or practice, maintained by Defendant City of Denver.

94). As a direct and proximate result of the unlawful actions of these Defendants, Plaintiffs have suffered emotional and economic harm.

### FOURTH CAUSE OF ACTION
### Violation of the Fourteenth Amendment
### Due Process Clause

100). Plaintiffs reallege and incorporate the foregoing paragraphs as if set forth herein.

101). Defendants' actions described above violated Plaintiffs' rights under the Fourteenth Amendment to the United States Constitution by denying Plaintiffs the due process of law by enforcing law and ordinances making basic human functions such as camping, sleeping, bathing, urinating and defecating in public a criminal offense, while utterly failing to provide a public means for individuals without homes to comply with the law; for the sole purpose of encouraging indigent individuals not to travel to Denver and those currently living in the jurisdiction to leave the City of Denver.

102). Defendants' conduct violated clearly established constitutional or other rights, of which Defendants knew, or of which reasonable public officials should have known, rendering Defendants liable to Plaintiffs under 42 U.S.C. § 1983.

104). As a direct and proximate result of the unlawful actions of these Defendants, Plaintiffs have suffered emotional and economic harm.

## PRAYER FOR RELIEF

105). Plaintiffs therefore respectfully request that the Court enter a judgment including:

(a). A declaratory judgment that Defendants' actions as described herein violated the First, Fourth and Fourteenth Amendments to the United States Constitution;

(b). To the extent the Court finds that Defendants' conduct were authorized by a policy or regulation, a declaratory judgment that those policies or regulations are unconstitutional under the First, Fourth and Fourteenth Amendments to the United States Constitution;

(c). A Permanent Injunction enjoining:

(i) The City of Denver from application of laws making basic human functions such as camping, sleeping, bathing, urinating and defecating in public a criminal offense to individuals who patently appear homeless without providing a public means for individuals without homes to comply with the law;

(ii) Mandating City officials to provide proper training and policy guidance concerning the applicability of the First Amendment to actions of government officials, and barring the City from defining First Amendment protections as applicable only to large groups of citizens engaged in what Defendants describe as "lawful demonstration, assembly, or protest";

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>VERIFICATION</u>

We, the undersigned individuals proceeding in propria persona, pursuant to 28 U.S.C. § 1746, do hereby declare under penalty of perjury that the factual statements made herein are based upon information personally known to us, are true to the best of our knowledge, and that we believe we are entitled to relief.

**DATED** this 6th day of January, 2020.

John Cooper, Jr.
*Pro Se* Plaintiff

Jonathan McLane
*Pro Se* Plaintiff

Katie Etcheverry
*Pro Se* Plaintiff

(d). As to all Defendants, compensatory and punitive damages for violation of the laws and Constitution of the United States in an amount of $50,000,000;

(e). Reasonable fees and costs of suit; and

(f). Any other relief as may be just and proper.

There can only be justice for one, when it is there for all.

**RESPECTFULLY SUBMITTED** this 6th day of January, 2020.


_____                          _____
John Cooper, Jr.                                 Jonathan McLane
*Pro Se* Plaintiff                               *Pro Se* Plaintiff

_____
Katie Etcheverry
*Pro Se* Plaintiff